**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:06cv69**

| | |
|---|---|
| CAROL G. BROWN, )<br>)<br>    Plaintiff, )<br>)<br>Vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>    Defendant. )<br>_____ ) | **MEMORANDUM OF<br>DECISION** |

**THIS MATTER** is before the court pursuant to 28, United States Code, Section 636(c) and upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings and conclusions. A judgment reflecting such conclusions is being entered simultaneously herewith.

**FINDINGS AND CONCLUSIONS**

**I.    Administrative History**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits in June 1990. Plaintiff's claim was denied both initially and on reconsideration; thereafter, plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision in 1991 which was unfavorable to plaintiff. Plaintiff did appeal such decision to the Appeals Council.

In 2004, plaintiff's claim was reopened under <u>Hyatt III</u> class membership, and a new hearing scheduled. A hearing was held before the same ALJ in 2006, and the ALJ denied such claim at the second level of the sequential evaluation process. Plaintiff thereinafter filed this Complaint, and the court upon agreement of the parties stayed this action so that the Appeals Council could first consider such Complaint as a request for review. The Appeals Council denied plaintiff's request for review and affirming the ALJ, making the ALJ's 2006 decision the final decision of the Commissioner of Social Security ("Commissioner"). The court now deems plaintiff's Complaint to be timely filed.

II.     **Factual Background**

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth.

Plaintiff contends that she became unable to work in December 1979 due to headaches. Plaintiff alleged that her headaches had bothered her since June 1977, but that they were not disabling until December 1979 when she stopped working A.R. 47, 459. In November and December 1977, plaintiff was seen for tension headaches A.R. 107-08. In February 1978, she was seen for anxiety. A.R. 108. In late 1978, plaintiff was taking a tension headache medication, Fiorinal, on an ongoing basis and occasionally took Norpramin, antidepressant; Darvon compound-65, which is indicated for mild to moderate pain; Empirin compound-1, a brand of aspirin; and, Donnatal, which is used for irritable bowel syndrome. A.R. 126. In early 1979, Plaintiff was prescribed an antidepressant, Parnate, on an ongoing basis and an anxiety

2

medication, Serax, once. A.R.132, 141. No medication was prescribed for her headaches, except for a small prescription for Tylenol #3 in May 1979. Id. In the latter part of 1979, plaintiff was prescribed Tylenol #3 and Motrin for her headaches. A.R. 149.

In October 1979, a few months before she stopped working, plaintiff saw Dr. Welch with complaints of stomach problems which Dr. Welch diagnosed as gastritis. A.R. 414. About a week later, plaintiff's stomach still hurt and Dr. Welch prescribed Donnatal. Id. On November 19, 1979, plaintiff still had complaints of stomach pain and Dr. Welch questioned whether plaintiff had colitis. A.R. 413. In December 1979, plaintiff told Dr. Welch that she had a three year history of daily headaches that usually occur in the back of her head in the afternoon. Id. Dr. Welch diagnosed a tension headache and prescribed Motrin. Id. In November 1980, Dr. Welch noted that plaintiff's headaches persisted but that she did not seem to be in much pain and did not seem to have emotional problems. A.R. 411. When evaluated by Dr. Pearce, a neurologist with the Bowman Gray School of Medicine of Wake Forest University, in December 1980, plaintiff complained of daily, afternoon headaches with occasional nausea but no vomiting. A.R. 415-16. Neurological and physical examination of plaintiff was normal. Dr. Pearce found that plaintiff's mental status was adequate and that her judgment, remote and recent memory, and affect were good. A.R. 415. Dr. Pearce diagnosed muscle contraction headaches and recommended physical therapy in addition to her medications. A.R. 416. About two weeks later, Dr. Pearce reported

that plaintiff was somewhat better and recommended that she continue with physical therapy. A.R. 417.

Plaintiff was seen by Dr. Pearce four times in 1981 through August of that year. A.R. 405-08. Dr. Pearce referred plaintiff to Laurence Bradley, Ph.D., of the Bowman Gray School of Medicine of Wake Forest University's Pain Clinic, and Dr. Bradley treated plaintiff in the pain control program from October 1, 1981 through December 22, 1981. A.R. 248, 405. As a part of this program, plaintiff completed daily self-assessments of her pain rating and her daily activities. A.R.258-97. Plaintiff's pain ratings indicated that her pain was generally mild to moderate. A.R. 258,261, 266, 271, 276, 283, 288, 293. Dr. Bradley reported that plaintiff showed moderate improvement in her headache activity as a result of her learning behavioral responses to her headaches in the pain control program. A.R. 248.

From the completion of her pain control program at the Pain Clinic at the end of 1981 through September 1984, plaintiff continued to see Dr. Welch about three to five times a year. A.R. 402-04, 418. Most of these visits were for complaints other than headaches including: tonsilitis; intestinal pain after meals; a sore throat, cold and fever; abdominal cramps and pain; an earache; and hemorrhoids. A.R. 402-04.

### III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v.

Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra.

## IV. Standard for Evaluating Allegations of Pain and Other Subjective Complaints

Plaintiff's claim for benefits includes allegations of pain or other subjective complaints. The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990)(Hyatt III), which held that " [b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Id., at 336. A two-step process for evaluating subjective complaint was developed by the appellate court in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), and is now reflected in Social Security Ruling 96-7p.[1]

---

[1]

"The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

5

Craig requires that the Commissioner apply a two-step analysis when assessing the credibility of a claimant's subjective complaints of pain. See 20 C.F.R. § 416.929. In conducting the two-step Craig analysis, Step One requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant" Craig, at 594. Once a medical impairment is identified by the ALJ in Step One that could reasonably be expected to produce the pain or other subjective complaint asserted, the intensity and persistence of that pain is evaluated by the ALJ along with the extent to which such pain or other subjective complaint limits claimant's ability to engage in work. Id.; see also 20 C.F.R. § 416.929(c).

Once the ALJ progresses to Step Two, he or she considers the following factors, which include: (1) plaintiff's testimony and other statements concerning pain or other subjective complaints; (2) plaintiff's medical history; (3) any laboratory findings; (4) objective medical evidence of pain if any; (5) the plaintiff's activities of daily living; and (6) any course of treatment the plaintiff has undergone to alleviate pain. Craig, supra, at 595.

V.  **Substantial Evidence**

   A.  **Introduction**

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different

conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

**B.     Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

(1)     An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

(2)     An individual who does not have a "severe impairment" will not be found to be disabled;

(3)     If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

(4)     If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

(5)     If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the second step of the sequential evaluation process.

C. **The Administrative Decision**

In parts relevant to the assignment of error, the ALJ determined that the plaintiff was not disabled, finding as follows:

> The claimant's credibility is further eroded by her prior hearing testimony that she waited 10 years after her alleged onset date of disability to apply for disability benefits because she wanted to work and kept hoping that her headaches would get better.
>
> * * *
>
> As for the claimant's prior hearing testimony regarding her minimal daily activities, this is cast into further doubt by her ability to continue work despite the headaches. The claimant alleged that her headaches began in 1977 but she continued to work for about 2 years.
>
> * * *
>
> There is certainly no evidence that any physician told her that she should quit. The undersigned finds that the claimant's allegations as to the extent, intensity, and duration of subjective symptoms, including pain, and resulting limitations, are not credible.
>
> ***
>
> After considering the evidence of record, <u>the undesigned finds that the claimant's medically determinable impairment might have been reasonably expected to produce the alleged symptoms</u>, but that the <u>claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible</u>.

A.R., at 17 (emphasis in original).

**D. Discussion**

**1. Plaintiff's Assignments of Error**

Plaintiff has made the following assignments of error:

I. The Administrative Law judge Erred at Step two of the Sequential Evaluation Process.

Plaintiff's assignment of error will be discussed below.

## 2. Assignment of Error

Plaintiff contends that the ALJ erred at denying her claim a the second level of the sequential evaluation process, arguing that the ALJ's credibility findings are inconsistent and not based on substantial evidence, that her attempts to seek treatment and take prescription medications should have supported her credibility, and that waiting 10 years to make her claim for benefits should support her claim as it was evidence that she desired to keep working. The court has considered each of these arguments as subcontentions, and will address them *seriatim*.

Underlying each of these subcontentions is the challenge to the ALJ's credibility determination. Foremost, credibility determinations are well within the discretion afforded the ALJ and are a necessary part of the disability determination process. In Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989), the Court of Appeals for the Fourth Circuit held that

> it is well settled that: "the ALJ is required to make credibility determinations--and therefore sometimes make negative determinations--about allegations of pain or other nonexertional disabilities. . . . But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, . . . and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process."

Id., (quoting Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (citations omitted)).

### (a) Consistency

Plaintiff argues that the ALJ's credibility findings are inconsistent and not based on substantial evidence. In support, plaintiff has excerpted portions of the ALJ's decision, leaving out phrases that show that the ALJ's decision was in fact consistent and based on substantial evidence.

As set forth above, the ALJ's full statements reflect his finding that plaintiff had headaches that could result in her subjective complaints, including pain, but not in the amount and degree she alleged. Plaintiff argues that it was inconsistent for the ALJ to find that her headaches were a medically determinable impairment and that "[p]laintiff's 'medically determinable impairment might have been reasonably expected to produce the alleged symptoms,'" A.R., at 17, but to also find that plaintiff "does not have a medically determinable impairment which [reasonably] could be expected to produce the actual subjective symptoms' alleged." A.R., at 14.

As defendant points out, this purported conflict results from plaintiff omitting portions of the last two statements quoting what that the ALJ had said in his decision. The ALJ's full statement provided, as follows:

> Having considered the foregoing evidence, the [ALJ] finds that the claimant does not have a medically determinable impairment which reasonably could be expected to produce the actual subjective symptoms, in the amount and degree, alleged by the claimant.

A.R., at 14. Cited in full, the ALJ then determined at the second step of the sequential evaluation process that

> After considering the evidence of record, <u>the [ALJ] finds that the claimant's medically determinable impairment might have been reasonably expected to produce the alleged symptoms</u>, but that the <u>claimant's statements concerning the</u>

10

<u>intensity, duration and limiting effects of these symptoms are not entirely credible</u>.

A.R., at 17.

When read as a whole, the ALJ found that plaintiff's headaches were a medically determinable impairment, but that the record did not support a conclusion that they produced the amount and degree of subjective complaints Plaintiff alleged they caused. The ALJ's decision is consistent and is fully supported by the substantial evidence of record as well as the evidence discussed by the ALJ in his decision.

### (b)  Seeking Treatment and Taking Medications

Plaintiff further argues that her attempts to seek treatment and take prescription medications should have supported her credibility. In accordance with the teachings of the Court of Appeals for the Fourth Circuit in <u>Gross v. Heckler</u>, 785 F.2d 1163 (4th Cir. 1986), the undersigned must find that the ALJ properly considered plaintiff's activities of daily living, the medications she sought, and the treatment she received for what she contends were disabling headaches. <u>See</u> <u>also</u> 20 C.F.R. §§ 404.1529(c)(3)(i) and 416.929(c)(3)(i). The nature of a claimant's symptoms, the effectiveness of any medication she is taking, and her daily activities are all relevant factors when considering subjective symptoms such as pain. <u>Id.</u>

Plaintiff last met the disability insured status on September 30, 1984. The record shows that Plaintiff was receiving little if any treatment for her headaches for about a year before her disability insured status was last met. In January 1984, Dr. Welch wrote a note in which he opined that plaintiff had severe headaches that had prevented her from working for four years and recommended that she not try to work at that time.

A.R., at 401. It was, however, proper for the ALJ to not fully credit this statement - - even though it was from a treating source - - inasmuch as the ultimate determination of whether a person is disabled is reserved to the Commissioner. 20 C.F.R. § 404.1527(e) (2006). Further, such opinion was not supported by findings as to any specific limitations resulting from plaintiff's headaches. The ALJ properly found that Dr. Welch's opinion was entitled to little weight because it was not supported by clinical findings and was inconsistent with such doctor's own recent treatment notes that had not shown significant treatment for plaintiff's headaches. A.R., at 17-18.

A treating physician is a physician who has observed the plaintiff's condition over a prolonged period of time. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). The opinion of a treating physician is only entitled to controlling weight if it is supported by "clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2).

> If a physician's opinion is not given controlling weight, then the "factors listed below" and in paragraphs (d)(3) through (5) used to determine the amount of weight to be given it are (1) the length of the treatment relationship and the frequency of examination ("the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion"); (2) the nature and extent of the treatment relationship; (3) supportability ("the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"); (4) consistency ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); and (5) specialization ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). Id. The regulation also makes clear, however, that the ultimate determination of disability is reserved for the Commissioner, and

> "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 416.927(e)(1).

Pittman v. Massanari 141 F.Supp.2d 601, *608 (W.D.N.C. 2001)(Horn, C.M.J.)

Not only does the evidence of record not support Dr. Welch's opinion of disability, it does not support a conclusion that plaintiff's headaches significantly limited her ability to perform basic work-related activities as of September 30, 1984. Plaintiff reported no treatment between January 1982 and November 1984, A.R., at 55, and treatments on those dates related to plaintiff's gynecological and endocrinological condition. Plaintiff's visits to her primary treating physician, Dr. Welch, from late 1981 through September 1984, were primarily for complaints other than headaches including: tonsilitis; intestinal pain after meals; a sore throat, cold and fever; abdominal cramps and pain; an earache and hemorrhoids. A.R., at 402-04.

As to use of prescription medication for allegedly disabling pain, the record shows that plaintiff was receiving only limited prescription medication for her headaches in the period leading up to September 30, 1984. Most of the prescriptions that plaintiff obtained during that period were for other medical conditions.

From July 13, 1982 through September 11, 1982, the only prescriptions Plaintiff filled were for forty Fiorinal #2 tablets (headache medicine), fifty Ampicillin (infection), twelve Rynatan (nasal remedy) and one tube of Valisone (topical anti-inflammatory). A.R., at 324.

Plaintiff next filled prescriptions in March and June 1983 when she got thirty Anaprox tablets (mild to moderate pain reliever), twelve Novafed A capsules

(antihistamine/decongestant), and 100 Amitriptyline tablets (anti-depressant). A.R., at 339.

In July through September 1983, plaintiff again filled prescriptions for thirty Anaprox tablets and, twelve Novafed A capsules and also filled prescriptions for sixty Tagamet tablets (gastric remedy) and fifty Bentyl capsules (irritable bowel treatment). A.R., at 349.

In October 1983, prescriptions filled by plaintiff were for Tagamet tablets, Bentyl capsules and Elavil (a brand name of Amitriptyline). A.R., at 355.

In July, August and September 1984, plaintiff filled prescriptions for thirty Adapin tablets (anxiety/depression treatment). A.R., at 361. On September 26, 1984, plaintiff also filled prescriptions for Anaprox and Donnatal (irritable bowel treatment). Id.

The ALJ's determination that plaintiff's limited use of prescribed medications for headaches did not support plaintiff's testimony as to disabling headaches is supported by substantial evidence of record. While another finder of fact could have drawn a different and more favorable inference from plaintiff's relevant prescription history as plaintiff argues, it was well within the bounds of reason and discretion for the ALJ to conclude that plaintiff's testimony of disabling pain is diminished where the evidence indicates that plaintiff received little more than 100 pain pills in over four years. Substantial evidence supports such decision.

### (c) Timing of Claims

Finally, plaintiff further argues that waiting 10 years to make her claim for benefits should support her claim rather than discredit her testimony. Plaintiff argues that such 10-year delay should have been considered as evidence that she desired to return to work and hoped to get better.

While that is an inference that a finder of fact could have drawn from the 10 year delay in bringing the claim, in this case the ALJ drew the opposite conclusion, finding that the delay in bringing the claim further eroded the plaintiff's credibility as to disabling pain. A.R., at 17. The ALJ explained his decision to weigh the delay against plaintiff's credibility, finding that at or near the time when she did file the claim, her doctors were noting that she was "reasonab[ly] functional" and that she "truly needs to try some sort of low stress entry level job." A.R., at 369-425 &104-105. This court simply can not reverse an ALJ's credibility determination unless it is patently wrong, Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000), and the ALJ clearly was within the bounds of his discretion in finding a claimant's credibility eroded where she did not bring a claim for benefits until some 10 years after she stop working due to pain she considered to be totally disabling.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales,

supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra, the undersigned will deny plaintiff's Motion for Summary Judgment, grant the Commissioner's Motion for Summary Judgment, and, therefore, affirm the decision of the Commissioner.

Signed: June 2, 2007

Dennis L. Howell
United States Magistrate Judge